ELIZABETH C. GRANT *vs.* JAMES S. GRANT.

APRIL 6, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Divorce. Exceptions.*

In reviewing the decision of the trial court on a petition for divorce, the appellate court will not act unless the decision was clearly erroneous.

*(2) Divorce. Extreme Cruelty.*

Similar acts or conduct in different circumstances may or may not amount to cruelty Much depends on the intention of the parties, the results which follow, the habits and customs which are common to the husband and wife.

*(3) Divorce. Extreme Cruelty.*

Where respondent's acts were designed to cause distress to his wife with the apparent expectation that he would thereby be able to coerce her and compel her to live and act in every way according to his will, thereby creating a situation where it was impossible for the wife to continue to live with him without real and serious danger to her health:—

*Held*, that the charge of extreme cruelty was sustained.

*(4) Divorce. Condonation.*

Where after a separation relations were resumed but respondent's conduct was unchanged, and petitioner left him, such resumption was not a condonation of respondent's offence, for such forgiveness is conditional and is forfeited by further misconduct and in cases of cruelty treatment much less cruel than would be necessary to be a good ground for divorce will suffice to avoid the defence of condonation.

DIVORCE. Heard on exceptions of respondent and overruled.

STEARNS, J. This is a petition for divorce for neglect to provide and extreme cruelty. At the hearing in the Superior Court petitioner did not press the charge of neglect to provide. The petition was granted on the ground of extreme cruelty. To this decision exception was duly taken by respondent and the cause is here on his bill of exceptions.

Some other exceptions were taken to certain rulings of the trial justice but they are unimportant and require no special mention.

The question is, Was the decision of the trial justice (1) clearly erroneous? *Sayles* v. *Sayles*, 41 R. I. 170. The petitioner is a woman of middle age, who, prior to her marriage, had been a teacher in a city high school for some eighteen or nineteen years. The respondent is an electrical contractor, who does electric wiring, etc., in houses and other buildings. A part of his work was manual labor, which at times of necessity resulted in covering his clothes and body with dirt. Prior to their marriage the parties had known each other for several years, during which period, although no actual engagement existed, they had been looking forward to a marriage eventually. On several occasions they came to the conclusion that they were unsuited to each other, and for a time the intimacy ceased, only to be renewed again and finally they were married. On the evening of their wedding day they went from Providence to Boston, at which latter city they started from the railroad station to walk to a hotel. After walking a considerable distance, with their bags in their hands, petitioner complained of being tired and suggested that a taxi cab should have been secured. Thereupon respondent dropped the bags he was carrying to the sidewalk, became enraged and upbraided his wife so noisily and so long as to attract the attention of the passers-by. His wife was terrified and humiliated by his conduct and on their return to Provi-

dence, several days later, she was in a highly nervous condition and ill as a result of the fear with which her husband had inspired her. The respondent never struck her or threatened to strike her. On several occasions because of his inability to find immediately some article in the house which he wished to use, he broke out into violent and loud complaints which were heard by people outside of the house. Respondent says that he has no charge to make against his wife except in regard to her extreme particularity, as he calls it, in regard to his table manners, his clothes and his personal cleanliness. Petitioner and other witnesses testify that respondent at times often used profane language to his wife and in her presence. Respondent denies this charge. He does not claim that the other charges of his wife are false, but says they are grossly exaggerated. He apparently resented the attempt of his wife to induce him to conform to some of the elementary and fundamental usages of civilized society. He refused to change his underwear for long periods or to bathe, although his work was of such a nature as to cause him to perspire freely, with the result that his wife was at times nauseated by the odors emanating from his person. He claimed that he did take a number of baths, but did this secretly and without the knowledge of his wife. His reason for thus acting was that his wife had annoyed him by her frequent attempts to induce him to take baths. He persisted in his conduct although he knew that his wife was greatly disturbed and distressed thereby. He refused to change his working clothes before sitting down to supper, apparently intending thus to offend and vex his wife. He refused to speak to friends of his wife whom she had invited to supper. In various other ways he often took the trouble to do things which had no other apparent object save to annoy and humiliate his wife before her friends and relatives. The aged father and mother of petitioner lived in the second story of the same house. At one time during the winter, after petitioner and respondent had quarreled,

respondent shut off the common heating plant in the cellar of the house, to the great inconvenience and suffering of petitioner's parents. Without further statement of the sordid details of this unhappy family life, we think certain conclusions are clearly to be drawn from the testimony.

Respondent's standards of decency and propriety differed from those of his wife. She was a woman of some refinement. Her standards of living were not unreasonable or different from the prevailing standards. He wilfully and designedly pursued a course of conduct, both in public and private, which was calculated to and actually did distress and humiliate his wife, not once but repeatedly. Petitioner testifies that she became ill as a result of this conduct. Respondent claims that her illness was due to the influenza. Whatever be the fact, we think the inevitable result of the continuance of such conduct on the part of respondent would be injurious to the health of his wife. The respondent has evidently a peculiar and unfortunate disposition, in which obstinacy and self-will are prominent parts. His wife was aware of some of his peculiarities before the marriage, and she can not now justly complain of such peculiarities either of character or conduct which although unpleasant and disagreeable, do not constitute a statutory ground of divorce. The respondent's acts were not the natural expression of his idiosyncrasies, but were designed to cause distress to his wife with the expectation, apparently, that respondent would thereby be able to coerce his wife and compel her to live and to act in every way according to his wish and will. By his own wrongful acts the respondent created a situation where it was impossible for petitioner to continue to live with him without real and serious danger to her health.

The courts, wisely as we think, generally have been reluctant to attempt to make any precise legal definition of "extreme cruelty" or "cruelty." Similar acts or conduct in different circumstances may or may not amount to cruelty. Much depends on the intention of the parties, the results

which follow, the habits and customs which are common to the husband and wife.    Without then attempting to formulate a definition which will cover all conceivable cases, we think the evidence in this case is sufficient to support the finding of the trial justice that respondent was guilty of extreme cruelty.

A second question remains: Was there a condonation by the wife? The parties only lived together five or six months.    After the first separation petitioner and respondent attempted to live together again and marital relations were resumed.    Respondent's conduct however was unchanged and petitioner left him.    In the circumstances we do not think that the resumption of marital relations was a condonation of respondent's offence which bars petitioner's right.    As stated in *Wilson* v. *Wilson*, 16 R. I. 122, it is a virtue for a wife to bear with her husband so long as there is any hope of his amendment.    Such forgiveness or condonation is conditional however and it is forfeited by further misconduct and in cases of cruelty "treatment much less cruel than would be necessary to be a good ground for divorce will suffice to avoid the defence of condonation." See also *Egidi* v. *Egidi*, 37 R. I. 481; *Sayles* v. *Sayles, supra.*

All of the respondent's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Fitzgerald & Higgins*, for petitioner.    *Laurence J. Hogan*, of counsel.

*Curtis, Matteson, Boss & Letts.    Ira Lloyd Letts*, for respondent.